# EXHIBIT A

# SUMMONS - CIVIL

(Except Family Actions)
JD-CV-1 Rev. 1-2000
C.G.S. § 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

## STATE OF CONNECTICUT
## SUPERIOR COURT
www.jud.state.ct.us

| "X" ONE OF THE FOLLOWING: Amount, legal interest or property in demand, exclusive of interest and costs is: |
|---|
| ☐ less than $2,500 |
| ☐ $2,500 through $14,999.99 |
| ☒ $15,000 or more ("X" if applicable) |
| ☐ Claiming other relief in addition to or in lieu of money or damages. |

### INSTRUCTIONS

1. Type or print legibly; sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| RETURN DATE (Mo., day, yr.) (Must be a Tuesday) 6/06/2006 |
|---|

| ☒ JUDICIAL DISTRICT | | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) | CASE TYPE (See JD-CV-1c) |
|---|---|---|---|
| ☐ HOUSING SESSION | G.A. NO. | New Haven | Major  M    Minor  90 |

| ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350) | TELEPHONE NO. (w/area code) |
|---|---|
| 235 Church Street, New Haven, CT 06510 | 203.503.6800 |

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code) | NOTE: Individuals' Names: Last, First, Middle Initial | ☒ Form JD-CV-2 attached | PTY NO. |
|---|---|---|---|---|
| FIRST NAMED PLAINTIFF | Contreras, Enrique Jose, 133 Paloma Srive, Coral Gables, Florida 33143 | | | 01 |
| Additional Plaintiff | Suarez, Jose, 86-12 79th Street, Woodhaven, New York 11421 | | | 02 |
| FIRST NAMED DEFENDANT | Host America Corporation, Two Broadway, Hamden, Connecticut 06518 | | | 50 |
| Additional Defendant | | | | 51 |
| Additional Defendant | | | | 52 |
| Additional Defendant | | | | 53 |

## NOTICE TO EACH DEFENDANT

1. **YOU ARE BEING SUED.**
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.

6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. The Clerk of Court is not permitted to give advice on legal questions.

| DATE 5/02/06 | SIGNED (Sign and "X" proper box) | ☒ Comm. of Superior Court ☐ Assistant Clerk | TYPE IN NAME OF PERSON SIGNING AT LEFT Joel T. Faxon |
|---|---|---|---|

### FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code) Joel T. Faxon, Stratton Faxon, 59 Elm St, New Haven, CT 06510 | TELEPHONE NUMBER 203.624.9500 | JURIS NO. (if atty. or law firm) 421593 |
|---|---|---|
| NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code) Christina M. Biagicli, 59 Elm Street, New Haven, Connecticut 06510 | | SIGNATURE OF PLAINTIFF IF PRO SE |

| # PLFS. 47 | # DEFS. 1 | # CNTS. 5 | SIGNED (Official taking recognizance, "X" proper box) | ☒ Comm. of Superior Court ☐ Assistant Clerk | For Court Use Only FILE DATE |
|---|---|---|---|---|---|

### IF THIS SUMMONS IS SIGNED BY A CLERK:

a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

| I hereby certify I have read and understand the above: | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. |
|---|---|---|---|

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

JD-CV-2 EL Rev. 8-94

FIRST NAMED PLAINTIFF (Last, First, Middle Initial)
Contreras, Enrique Jose, 133 Paloma Srive, Coral Gables, Florida 33143

FIRST NAMED DEFENDANT (Last, First, Middle Initial)
Host America Corporation, Two Broadway, Hamden, Connecticut 06518

### ADDITIONAL PLAINTIFFS

| NAME (Last, First, Middle Initial, if individual)    ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| Radar Devices, Inc., Alameda, California 94501-1048 | 03 |
| Rahanavong, Buone Ome, 46424 Springwood Court, Potomac Falls, Virginia 20165 | 04 |
| Cilantro Funds Partners LP, 3210 Downs Cove Road, Windermere, Florida 34786 | 05 |
| Su, Joesph, P.O. Box 35161, Houston, Texas 77235 | 06 |
| Desai, Hermant A., 3176 Calusa Avenue, Simi Valley, California 93063 | 07 |
| Fjortoft, Per F., 20414 92nd Avenue West, Edmonds, Washington 98020 | 08 |
| Arrandt, Melvin J., 3 Grove Isle Drive, Coconut Grove, Florida 33133 | 09 |
| Michos, Anastasia, 26-53 28th Street, Astoria, New York 11102 | 10 |
| Gamali, Mostafa M., P.O. Box 6648, Salmiya 22077, Kuwait City, Kuwait | 11 |
| Samler, James M., 1035 Concord Street, Hagerstown, Maryland 63301 | 12 |
| Lee, Kouk S., 164 N. 74th Street, Apt. #2116, Mesa, Arizona 85207 | 13 |

### ADDITIONAL DEFENDANTS

| NAME (Last, First, Middle Initial, if individual)    ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| | 54 |
| | 55 |
| | 56 |
| | 57 |
| | 58 |
| | 59 |
| | 60 |

| | | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO. |

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**

JD-CV-2 EL Rev. 8-94

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

FIRST NAMED PLAINTIFF (Last, First, Middle Initial)
Contreras, Enrique Jose, 133 Paloma Srive, Coral Gables, Florida 33143

FIRST NAMED DEFENDANT (Last, First, Middle Initial)
Host America Corporation, Two Broadway, Hamden, Connecticut 06518

ADDITIONAL PLAINTIFFS

| NAME (Last, First, Middle Initial, if individual)          ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| Shah, Haresh S., 27 Sunset Road, Searingtown, New York 11507 | 03 |
| Caris, Daniel G.R., Lindenlaan 2, 3290 Diest (Schaffen)-VI, Brabant, 3290 Belgium | 04 |
| Kramer, Michael L., 50 East 13th Street, New York, New York 10021 | 05 |
| Sodano, Laura, 240 North Hewlett Avenue, Merrick, New York 11566 | 06 |
| Nassaney, Diane L., 13413 Friar Street, Van Nuys, California 91401 | 07 |
| Zahorchak, John J., 1405 West 48th Place, Golden, Colorado 80403 | 08 |
| Ruan, Richard M., 1886 Via Aracena, Camarillo, California 93010 | 09 |
| Yowell, James Russell, 13 Marsh Millet Court, Spring, Texas 77380 | 10 |
| Novontry, Jason, 9500 Gilman Drive, La Jolla, California 92093-0715 | 11 |
| Mathur, Shashank, 600 Canary East Drive, Manchester, Missouri 63021 | 12 |
| Holcomb, Louis W., 907 Cypress Terrace, Pompano Beach, Florida 33069 | 13 |

ADDITIONAL DEFENDANTS

| NAME (Last, First, Middle Initial, if individual)          ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| | 54 |
| | 55 |
| | 56 |
| | 57 |
| | 58 |
| | 59 |
| | 60 |

| | | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO. |

CIVIL SUMMONS-Continuation

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**

STATE OF CONNECTICUT
**SUPERIOR COURT**

JD-CV-2 EL Rev. 8-94

FIRST NAMED PLAINTIFF (Last, First, Middle Initial)
Contreras, Enrique Jose, 133 Paloma Srive, Coral Gables, Florida 33143

FIRST NAMED DEFENDANT (Last, First, Middle Initial)
Host America Corporation, Two Broadway, Hamden, Connecticut 06518

| NAME (Last, First, Middle Initial, if individual)    ADDRESS (No, Street, Town and ZIP Code) | CODE |
|---|---|
| Sawant, Anil, 10409 Georgetown Road, Berlin, Maryland 21811-3158 | 03 |
| McCune, Constance T., P.O. Box 640 | 04 |
| Eggena, Jonathan, 91 Tacoma Circle, Asheville, North Carolina, 28801 | 05 |
| Teamey, Kipp, 3725 Macomb Street, Apartment #209 NW, Washington, D.C. 20016 | 06 |
| Gregory, Larry D., P.O. Box 829, Statesville, North Carolina 28687 | 07 |
| Gomberg, Anita B., One Grove Isle Drive, Apartment #608, Miami, Florida 33133 | 08 |
| Brunt, Renee l., 5294 Lakeshore Road, Hamburg, New York 14075 | 09 |
| Taiwo, David, 920 Quinnipiac Avenue, Unit 6, New Haven, Connecticut 06513 | 10 |
| Nguyen, Kevin D., 5517 Lawnsberry Drive, Fort Worth, Texas 76137 | 11 |
| Youssif, Aiman F., 1608-3757 Kaneff Cres, Mississauga, Ontario, L5A 3Y5 | 12 |
| Schoeman, Michael, 50 East 13th Street, NEw York, New York 10021 | 13 |

| NAME (Last, First, Middle Initial, if individual)    ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| | 54 |
| | 55 |
| | 56 |
| | 57 |
| | 58 |
| | 59 |
| | 60 |

| | | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO |

**CIVIL SUMMONS-Continuation**

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**

STATE OF CONNECTICUT
**SUPERIOR COURT**

JD-CV-2 EL Rev. 8-94

FIRST NAMED PLAINTIFF (Last, First, Middle Initial)

Contreras, Enrique Jose, 133 Paloma Srive, Coral Gables, Florida 33143

FIRST NAMED DEFENDANT (Last, First, Middle Initial)

Host America Corporation, Two Broadway, Hamden, Connecticut 06518

### ADDITIONAL PLAINTIFF

| NAME (Last, First, Middle Initial, if individual)　　ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| Dombrowski, Lawrence E., 33 Cinnamon Teal, Alisa Viejo, California 93010 | 03 |
| Hurst, Brooks L., 4349 Stewart Avenue, Los Angeles, California 90066 | 04 |
| Zeko, Geizm, 1616 Mill Plain Road, Fairfield, Connecticut 06824 | 05 |
| Yelin, Douglas M., P.O. Box 261, Bellmore, New York 1170 | 06 |
| Zhu, Joyce, 115 Lane 366 Shangai, SH 201612 | 07 |
| Tessendorf, John N., 215 5th Avenue, Eau Claire, WI 54703 | 08 |
| Shih, Chen-Wai, 122 Dockside Circle, Weston, Florida 33327 | 09 |
| Tran, Thien B., 8318 South Independence Circle, Apartment 306, Littleton, Colorado 80128 | 10 |
| Strode, James, Lexcom, Lexington, Kentucky 40503 | 11 |
| Fender, William I., 7001 Sportsman Hideaway, Georgetown, Indiana 47122 | 12 |
| Burns, David A., 2900 Thomas Avenue, Minneapolis, Minnesota 55416 | 13 |

### ADDITIONAL DEFENDANT

| NAME (Last, First, Middle Initial, if individual)　　ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
|  | 54 |
|  | 55 |
|  | 56 |
|  | 57 |
|  | 58 |
|  | 59 |
|  | 60 |

| | | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO. |

**CIVIL SUMMONS-Continuation**

# CIVIL SUMMONS
## CONTINUATION OF PARTIES

JD-CV-2 EL Rev. 8-94

### STATE OF CONNECTICUT
### SUPERIOR COURT

FIRST NAMED PLAINTIFF (Last, First, Middle Initial)

**Contreras, Enrique Jose, 133 Paloma Srive, Coral Gables, Florida 33143**

FIRST NAMED DEFENDANT (Last, First, Middle Initial)

**Host America Corporation, Two Broadway, Hamden, Connecticut 06518**

### ADDITIONAL PLAINTIFFS

| NAME (Last, First, Middle Initial, if individual)   ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| Samuel, Matthew, 88-19 145th Street, Jamaica, New York 11435 | 03 |
| | 04 |
| | 05 |
| | 06 |
| | 07 |
| | 08 |
| | 09 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |

### ADDITIONAL DEFENDANTS

| NAME (Last, First, Middle Initial, if individual)   ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|
| | 54 |
| | 55 |
| | 56 |
| | 57 |
| | 58 |
| | 59 |
| | 60 |

| | CODE | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO. |

**CIVIL SUMMONS-Continuation**

| | |
|---|---|
| ENRIQUE JOSE CONTRERAS; JOSE SUAREZ; ANIL SAWANT, RADAR DEVICES, INC.; BOUNE OME RAHANAVONG; CILANTRO FUND PARTNERS, LP; JOSEPH SU; HERMANT A. DESAI; PER F. FJORTOFT;  MELVIN J. ARRANDT; ANASTASIA MICHOS; MOSTAFA M. GAMALI; JAMES M. SEMLER; KOUK S. LEE; HARESH S. SHAH; DANIEL G.R. CARIS; MICHAEL LOUIS KRAMER; LAURA M. SODANO; DIANA L. NASSANEY; JOHN J. ZAHORCHAK; RICHAR M. RUAN; JAMES RUSSELL YOWELL; JASON NOVONTY; SHASHANK MATHUR; LOUIS HOLCOMB; CONSTANCE T. MCCUNE; JONATHAN EGGENA; KIPP TEAMEY; LARRY D. GREGORY; ANITA B. GOMBERG. RENEE L. BRUNT; DAVID TAIWO; KEVIN D. NGUYEN; AIMAN YOUSSIF; MICHAEL SCHOEMAN; LAWERENCE EDWARD DOMBROWSKI; BROOKS L. HURST; GEZIM ZEKO; DOUGLAS M. YELIN; JOYCE ZU; JOHN N. TESSENDORF; CHEN-WAI SHIJI; THIEN B. TRAIN; JAMES STRODE; WILLIAM I. FENDER; DAVID A. BURNS; MATTHEW SAMUEL | SUPERIOR COURT OF CONNECTICUT JUDICIAL DISTRICT OF NEW HAVEN AT NEW HAVEN |
| Plaintiffs, | |
| v. | |
| HOST AMERICA CORPORATION, | May 1, 2006 |
| Defendant. | |

## COMPLAINT

1.    Plaintiffs Enrique Jose Contreras; Jose Suarez; Anil Sawant, Radar Devices, Inc.;

Boune Ome Rahanavong; Cilantro Fund Partners, LP; Joseph Su; Hermant Desai; Per F. Fjortoft;

Melvin J. Arrandt; Anastasia Michos; Mostafa M. Gamali; James M. Semler; Kouk S. Lee; Haresh S. Shah; Daniel G.R. Caris; Michael Louis Kramer; Laura M. Sodano; Diana L. Nassaney; John J. Zahorchak; Richard M. Ruan; James Russell Yowell; Jason Novonty; Shashank Mathur; Louis Holcomb; Constance T. McCune; Jonathan Eggena; Kip Teamey; Larry D. Gregory; Anita B. Gomberg; Renee L. Brunt; David Taiwo; Kevin D. Nguyen; Aiman Youssif; Michael Schoeman; Lawerence Edward Dombrowski; Brooks L. Hurst; Gezim Zeko; Douglas M. Yelin; Joyce Zu; John N. Tessendorf; Chen-Wai Shih; Thien B. Tran; James Strode; William I. Fender and David A. Burns bring this action upon the investigation made by and through plaintiffs' counsel, which included, *inter alia*, a review of Host America Corporation's ("Host America" or "Company") periodic filings with the U.S. Securities and Exchange Commission ("SEC"), as well as press releases, news articles, and media reports concerning the Company. Furthermore, this complaint is based upon plaintiffs' personal knowledge as to plaintiffs and plaintiffs' own acts and upon information and belief as to all other matters, based upon the aforementioned investigation.

2.      This case alleges fraud, fraudulent misrepresentation, fraudulent non-disclosure, negligent misrepresentation, and *respondeat superior* liability against defendant Host America in connection with the fundamentally and materially false statements defendant issued on July 12, 2005, when the Company announced it received a firm commitment by its "prestigious customer," WalMart, to purchase the Company's LIGHTMasterPlus product for installation in WalMart stores (hereafter "WalMart Transaction"). In fact, WalMart was not a customer of the Company's in connection to purchasing the LIGHTMasterPlus and there were no firm agreements to install the Company's products in any WalMart stores.

3.      The July 12, 2005 announcement artificially increased the price and volume of

2

trading in Host America stock and ultimately led to the announcement of an SEC investigation on July 19, 2005 and a trading halt of the Company's stock on July 22, 2005. On August 31, 2005 the Company announced there were no firm agreements to install the Company's products in WalMart stores and that WalMart was not a customer of the Company. The next day on September 1, 2005, when the trading halt of the Company's stock was lifted, Host America stock fell approximately 73%, thereby damaging the plaintiffs.

## JURISDICTION AND VENUE

4.      The claims asserted herein arise under and pursuant to the common-law of the State of Connecticut.

## PARTIES

5.      Plaintiff, Enrique Jose Contreras residing at 133 Paloma Drive. Coral Gables, Florida 33143 purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $318,927.67.

6.      Plaintiff, Jose Suarez residing at 86-12 79th Street, Woodhaven, New York 11421 purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $214,283.30.

7.      Plaintiff, Radar Devices, Inc. a corporation with its principal place of business at 909 Marina Village Parkway #259, Alameda, California purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $518,244.18.

8.      Plaintiff, Boune Ome Rahanavong residing at 46424 Springwood Court, Potomac Falls, Virginia 20165 purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $176,595.98.

3

9.   Plaintiff, Cilantro Funds Partners, LP, of 3210 Downs Cove Road, Windermere, Florida 34786, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $133,402.35.

10.   Plaintiff, Joseph Su, residing at P.O. Box 35161, Houston Texas 77235, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $151,350.

11.   Plaintiff, Hermant A. Desai, residing at 3176 Calusa Avenue, Simi Valley, California purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $135,220.40.

12.   Plaintiff, Per F. Fjortoft, residing at 20414 92nd Avenue West, Edmonds, Washington 98020, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $121,346.

13.   Plaintiff, Melvin J. Arrandt, residing at 3 Grove Isle Drive, Coconut Grove, Florida 33133, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $116,638.

14.   Plaintiff, Anastasia Michos residing at 26-53 28th Street, Astoria, New York 11102, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $98,979.

15.   Plaintiff, Mostafa M. Gamali, residing at P.O. Box 6648, Salmiya 22077, Kuwait City, Kuwait, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $77,756.10.

16.   Plaintiff, James M. Semler, residing at 1035 Concord Street, Hagerstown, Maryland 63301, purchased Host America securities in reliance upon the July 12, 2005 press

4

release and has been damaged in an amount approximating $72,350.

17.    Plaintiff, Kouk S. Lee, residing at 164 N. 74th Street Apartment #2116 Mesa, Arizona 85207, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $64,550.

18.    Plaintiff, Haresh S. Shah, residing at 27 Sunset Road, Searingtown, New York 11507, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $63,850.

19.    Plaintiff, Daniel G.R. Caris, residing in Lindenlaan 2, 3290 Diest (Schaffen) · VI. Brabant, 3290 Belgium, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $63,282.50.

20.    Plaintiff, Michael L. Kramer, residing at 50 East 13th Street, New York, New York 10021, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $62,700.

21.    Plaintiff, Laura Sodano, residing at 240 North Hewlett Avenue, Merrick, New York 11566, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $61,800.

22.    Plaintiff, Diane L. Nassaney, residing at 13413 Friar Street, Van Nuys, California 91401, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $59,238.

23.    Plaintiff, John J. Zahorchak, residing at 1405 West 48th Place, Golden, Colorado 80403, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $53,440.

24.    Plaintiff, Richard M. Ruan, residing at 1886 Via Aracena, Camarillo, California

32.     Plaintiff, Kipp Teamey, residing at 3725 Macomb Street Apartment 209 NW,
Washington D.C. 20016, purchased Host America securities in reliance upon the July 12, 2005
press release and has been damaged in an amount approximating $30,407.66.

33.     Plaintiff, Larry D. Gregory, residing at P.O. Box 829, Statesville, North Carolina
28687, purchased Host America securities in reliance upon the July 12, 2005 press release and
has been damaged in an amount approximating $30,303.45.

34.     Plaintiff, Anita B. Gomberg, residing at One Grove Isle Drive, Apartment 608,
Miami, Florida 33133, purchased Host America securities in reliance upon the July 12, 2005
press release and has been damaged in an amount approximating $28,990.

35.     Plaintiff, Renee L. Brunt, residing at 5294 Lakeshore Road, Hamburg, New York
14075, purchased Host America securities in reliance upon the July 12, 2005 press release and
has been damaged in an amount approximating $28,775.

36.     Plaintiff, David Taiwo, residing at 920 Quinnipiac Avenue Unit 6, New Haven,
Connecticut 06513, purchased Host America securities in reliance upon the July 12, 2005 press
release and has been damaged in an amount approximating $28,704.

37.     Plaintiff, Kevin D. Nguyen, residing at 5517 Lawnsberry Drive, Fort Worth,
Texas 76137, purchased Host America securities in reliance upon the July 12, 2005 press release
and has been damaged in an amount approximating $28,590.

38.     Plaintiff, Aiman F. Youssif, residing at 1608-3757 Kaneff Cres Mississauga
Ontario L5A 3Y5, purchased Host America securities in reliance upon the July 12, 2005 press
release and has been damaged in an amount approximating $27,160.

39.     Plaintiff, Michael Schoeman, residing at 50 East 13th Street, New York, New
York 10021, purchased Host America securities in reliance upon the July 12, 2005 press release

7

93010, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $50.205.50.

     25.    Plaintiff, James Russell Yowell, residing at 13 Marsh Millet Court, Spring, Texas 77380, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $42,005.

     26.    Plaintiff, Jason Novonty, residing at 9500 Gilman Drive, La Jolla, California 92093-0715, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $40,914.50.

     27.    Plaintiff, Shashank Mathur, residing at 600 Canary East Drive, Manchester MO 63021, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $39,310.

     28.    Plaintiff, Louis W. Holcomb, residing at 907 Cypress Terrace, Pompano Beach, Florida 33069, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $32,699.60.

     29.    Plaintiff Anil Sawant of 10409 Georgetown Road, Berlin, Maryland 21811-3158 purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $32,000.

     30.    Plaintiff, Constance T. McCune, residing at P.O. Box 640, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $31,425.

     31.    Plaintiff, Jonathan Eggena, residing at 91 Tacoma Circle, Asheville, North Carolina 28801, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $30,650.

and has been damaged in an amount approximating $26,894.80.

40.    Plaintiff, Lawerence F. Dombrowski, residing at 33 Cinnamon Teal, Aliso Viejo, California 93010, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $26,760.

41.    Plaintiff, Brooks L. Hurst, residing at 4349 Stewart Avenue, Los Angeles, California 90066, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $25,630.

42.    Plaintiff, Geizm Zeko, residing at 1616 Mill Plain Road, Fairfield, Connecticut 06824, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $25,620.

43.    Plaintiff, Douglas M. Yelin, residing at P.O. Box 261 Bellmore, New York 11710, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $25,080.

44.    Plaintiff, Joyce Zhu, residing at 115 Lane 366 Shanghai, SH 201612, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $24,450.

45.    Plaintiff, John N. Tessendorf, residing at 215 5TH Avenue, Eau Claire, WI 54703, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $24,440.

46.    Plaintiff, Chen-Wai Shih, residing at 122 Dockside Circle, Weston, Florida 33327, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $24,290.

47.    Plaintiff, Thien B. Tran, residing at 8318 South Independence Circle Apt. #306,

8

Littleton, Colorado 80128, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $24,285.30.

48.     Plaintiff, James Strode, residing at Lexcom, Lexington, Kentucky 40503, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $23,920.

49.     Plaintiff, William I. Fender, residing at 7001 Sportsman Hideaway, Georgetown, Indiana 47122, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $23,808.

50.     Plaintiff, David A. Burns, residing at 2900 Thomas Avenue, Minneapolis Minnesota 55416, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $21,941.50.

51.     Plaintiff, Matthew Samuel, residing at 88-19 145th Street, Jamaica, New York 11435, purchased Host America securities in reliance upon the July 12, 2005 press release and has been damaged in an amount approximating $65,214.60.

52.     Each of the above mentioned plaintiffs are collectively referred to herein as the "Plaintiffs."

53.     Defendant Host America, a Delaware corporation, provides food service management, energy management conservation, and pre-employment background screening. The company operates in four divisions: Host America Business Dining, Lindley Food Service (Lindley), SelectForce, and GlobalNet Energy Investors (GlobalNet). The GlobalNet division markets, sells, and installs control panels and other electrical energy saving devices to commercial and industrial users. Host America was formed in 1986 under the name University Dining Services, Inc. and changed its name to Host America Corporation in 1998. The

9

company's headquarters is located at 2 Broadway in Hamden, Connecticut 06518-2697.

54.     Non-party EnergyNSync is an entity controlled and owned by defendant Host America. Defendant EnergyNSync, a "principally inactive" company according to the Company's report filed with the SEC on Form 10-Q on May 20, 2005, is the owner of certain technology comprising the proprietary software used in products developed and manufactured by Host America's wholly-owned subsidiary, GlobalNet, and other affiliates of Host America, under an exclusive contract. This includes the LightMasterPlus, the product which is at the center of the defendant's false and misleading statements.

55.     Non-party Geoffrey Ramsey was, at all relevant times, the Company's President and Chairman of the Board and Chief Executive Officer ("CEO") of Host America until his termination from the Company on November 28, 2005.  On August 31, 2005, the Company announced that it had placed Ramsey on administrative leave without pay and that Ramsey had stepped down as the Chairman of the Company.

56.     At all relevant times herein, Ramsey by reason of his management positions and status with Host America was acting within the scope of his employment with Host America and at the express direction or implied acquiescence of Host America.

## SUBSTANTIVE ALLEGATIONS

57.     On July 12, 2005, Host America issued a press release, and filed a Form 8-K with the SEC, announcing the WalMart Transaction.  The release stated:

> **Host America's Energy Division Announces Wal-Mart Transaction**
> **Ten Store First-Phase for LightMasterPlus**
>
> **HAMDEN, CT - July 12, 2005 - Host America Corporation (NASDAQ-CAFÉ) announced today that it will start surveying 10 Wal-Mart stores in the southwest, in preparation for installation of**

**its LightMasterPlus on the fluorescent lighting system of each store.**
Details of the surveys will be released as they become available. The
LightMasterPlus has been tested since November, 2004, at Oklahoma
Gas & Electric, in Oklahoma City, averaging 22% energy savings when
installed on T-8 & T-12 fluorescent lighting systems. Simultaneously,
testing took place at one of the company's stores in Texas for over six
months, which reported a 19% energy savings. Recently, the US
Department of Energy at Oak Ridge National Laboratory, Oak Ridge,
TN, conducted extensive testing of the product for energy savings and
the effect on ballasts, fixtures and tubes. The results showed the product
saved 15% - 30% on fluorescent lighting and that it reduced
temperatures in the ballast. This shows that it does not degrade the
specific life expectancy of the ballast.

**"This is a major event for our company, which we have been
working towards since last year. We expect this prestigious customer
will like the savings they receive from this first-phase roll-out and
believe that the next phase will involve a significant number of
stores," said Company CEO, Geoffrey Ramsey.**

58.     Host America's purpose in issuing the press release was to provide guidance to

investors as to the future expected revenue for the Company and also to provide guidance to

investors as to the present value of the Company's stock.  Defendant intended to influence

Plaintiffs' to purchase Host America stock by issuing the July 12, 20005 press release and

reasonably foresaw that investors would purchase Host America stock based on the positive

news of the Walmart Transaction issued in the July 12, 2005 press release.

59.     Market reaction to this announcement was swift.  Trading volume increased from

41,000 shares traded on July 11, 2005, to 13,813,100 shares on July 12, 2005.  Furthermore, the

Company=s stock, which closed for trading at $3.12 per share on July 11, 2005, opened at $4.25

per share on July 12, 2005 prior to the announcement and closed at $6.35 per share, after

reaching a high of $7.47.

60.     Over the next eight trading days, volume reached a high of 32,569,600 shares on

July 18, 2005, and the Company's stock price reached a high of $16.88 on July 19, 2005.

11

61.     The above statements in the July 12, 2005 press release and Form 8-K were false and misleading because it misrepresented the nature of the WalMart Transaction as one whereby the Company had a firm commitment by WalMart to purchase the Company's LIGHTMasterPlus for installation in WalMart stores. In fact, WalMart had made no commitment to purchase or install the LIGHTMasterPlus either in a test or full installation as evidenced by the Company's purportedly corrective August 31, 2005 Form 8-K and press release, which states in relevant part:

> With respect to the July 12, 2005 press release, Host wishes to state that, while Host believed that there was an oral understanding between Host and Wal-Mart Stores, Inc. that Host would begin surveying 10 Wal-Mart stores, **there is not, and never has been, a formal, written agreement with Wal-Mart concerning the proposed 10-store survey that was the subject of the July 12, 2005 press release nor is there any agreement for the installation of LightMasterPlus(R). To date, neither Host nor its wholly-owned energy management subsidiary R.S. Services, Inc. has received from Wal-Mart a list of the 10 stores to be surveyed. Further, it is Host's understanding that any purchase and/or installation of the LightMasterPlus(R) will require approval by Wal-Mart senior management.**

62.     On July 19, 2005, the Company filed a Form 8-K with the SEC, and issued a press release announcing, in part:

> On July 19, 2005, Host America Corporation ("Host") was contacted informally by the Fort Worth Office of the Securities and Exchange Commission ("SEC"). The SEC has requested the voluntary provision of documents and related information regarding Host's press release of July 12, 2005, and its Form 8-K filing of that day to which the release was an exhibit, and into related developments in the trading of Host securities.

63.     The July 19, 2005 press release, which the Company issued mid-afternoon that day, caused a significant drop in the Company's stock. That morning the Host America stock

12

opened at $16.13 and fell to $14.58, a 9.6% drop.

64.    On July 22, 2005, the Company filed a Form 8-K with the SEC, and issued a

press release announcing, in part:

> Host America Corporation was informed by the Securities and Exchange
> Commission that the SEC has commenced a formal investigation of
> Host, certain of its officers, directors and others in connection with a
> press release issued by Host on July 12, 2005, relating to dealings
> between Host and Wal-Mart Stores, Inc.

65.    On July 22, 2005, all trading in Host America securities was halted pending SEC

review. The SEC Order halting trading in Host America stock was issued no less than three days

following the SEC's request for additional information from the Company on July 19, 2005. The

SEC Order provided the following explanation:

> It appears to the Securities and Exchange Commission that there is a lack of
> current and accurate information concerning the securities of Host America
> Corporation ("Host America"), because of questions regarding the accuracy of
> Host America's assertions about dealings with Wal-Mart Stores, Inc., in its press
> release of July 12, 2005 (also incorporated as an exhibit to a Form 8-K filing with
> the Commission on the same date).
>
> The Commission is of the opinion that the public interest and the protection of
> investors require a suspension of trading in the securities of the above-listed
> company.

66.    In halting trading, the SEC contemporaneously issued a separate statement

cautioning brokers, dealers, shareholders, and prospective purchasers that they should carefully

consider the foregoing information along with all other currently available information, and any

information subsequently issued by the company. At the time of the trading halt, Host America

stock was priced at $13.92 per share.

67.    On August 5, 2005, investors would learn for the first time that The NASDAQ

Stock Market had initiated its own investigation of the events surrounding the July 12, 2005

13

press release. As a result of an independent investigation involving review of public documents

and information provided by Host America, The NASDAQ Stock Market also determined that

Host America no longer qualified for inclusion "in order to maintain the quality of, and the

public's confidence in, The Nasdaq Stock Market. The August 5, 2005 press release issued by

the Company announcing this news stated in relevant part:

> HAMDEN, Conn., Aug. 5 /PRNewswire/ -- On August 5, 2005, Host
> America Corporation ("Host") was notified by The NASDAQ Stock
> Market ("Nasdaq") that based on a review of public documents and
> information provided by Host to Nasdaq related to the issuance of a July
> 12, 2005 press release, the Staff of Nasdaq Listing Investigations and
> Listing Qualifications has determined that Host no longer qualifies for
> inclusion in the Nasdaq Stock Market and that its securities are therefore
> subject to delisting. Nasdaq Marketplace Rules 4300 and 4330(a)(3)
> provide the Staff with broad discretionary authority to deny continued
> inclusion of securities in order to maintain the quality of, and the public's
> confidence in, The Nasdaq Stock Market. Accordingly, Nasdaq has
> informed Host that its securities will be delisted from Nasdaq at the
> opening of business on August 16, 2005, unless Host requests a hearing
> in accordance with the Marketplace Rule 4800 Series.
>
> Host will request a hearing before a Nasdaq Listing Qualifications Panel
> to review the Nasdaq Staff determination. Any such hearing request will
> stay the delisting of Host's securities pending the Panel's decision.

    68.    On August 31, 2005 the Company filed a Form 8-K and issued a press release

announcing in relevant part:

> On July 19, 2005, the Staff of the Securities and Exchange
> Commission's Fort Worth Office initiated an informal inquiry into the
> facts and circumstances surrounding the press release and, on July 22,
> 2005, the SEC issued a Formal Order of Investigation of Host and
> certain of its officers, directors and others and initiated a suspension in
> the trading of Host's securities. The SEC investigation is ongoing. In
> addition, on August 5, 2005 Host was notified by The NASDAQ Stock
> Market that the Staff of the NASDAQ Listing Investigations and Listing
> Qualifications Departments had determined based on a review of
> publicly available documents and information provided by Host to
> NASDAQ in relation to the issuance of the July 12, 2005 press release,
> that Host's common stock should be delisted from The NASDAQ Stock

Market based on public interest concerns.   Host appealed this determination and a hearing before a NASDAQ Listing Qualifications Panel has been scheduled for September 1, 2005.

With respect to the July 12, 2005 press release, Host wishes to state that, while Host believed that there was an oral understanding between Host and Wal-Mart Stores, Inc. that Host would begin surveying 10 Wal-Mart stores, **there is not, and never has been, a formal, written agreement with Wal-Mart concerning the proposed 10-store survey that was the subject of the July 12, 2005 press release nor is there any agreement for the installation of LightMasterPlus®. To date, neither Host nor its wholly-owned energy management subsidiary R.S. Services, Inc. has received from Wal-Mart a list of the 10 stores to be surveyed.  Further, it is Host's understanding that any purchase and/or installation of the LightMasterPlus® will require approval by Wal-Mart senior management.**

Based on the preliminary findings of the Special Committee's investigation into the facts and circumstances surrounding the July 12, 2005 press release, the Board of Directors of Host voted yesterday, August 30, 2005, to take the following personnel actions:  Effective as of yesterday, Geoffrey Ramsey, Chief Executive Officer and President of Host, was placed on administrative leave without pay pending the completion of the Special Committee's investigation and its determination regarding what further personnel actions are necessary and appropriate. David Murphy, Chief Financial Officer of Host, was appointed to serve as acting Chief Executive Officer and President. In addition, Mr. Ramsey has also resigned as a member and Chairman of the Board of Directors. Mr. Ramsey was not a member of any committee of the Board of Directors.

69.      The numerous adverse disclosures made during the trading halt, and in the August 31, 2005 press release, caused Host America's stock to immediately lose 73% of its value the following day on September 1, 2005 -- when the trading halt was lifted.  The stock closed for trading on September 1, 2005, at $3.71 per share, down from $14.25 per share at the time of the halt.

## ADDITIONAL ALLEGATIONS DEMONSTRATING FALSITY AND SCIENTER

70.      As alleged herein, Host America acted with scienter in that the Company knew

that the statements issued or disseminated in the name of the Company were materially misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendant, by virtue of its receipt of information reflecting the true facts regarding the Walmart Transaction, its control over, and/or receipt and/or modification of Host America's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Host America, participated in the fraudulent scheme alleged herein.

71.     The Company's officers and directors were also motivated to inflate the Company's stock price in order to enable them to sell their personally-held common stock to the unsuspecting market.     The Company's officers and directors engaged in the following transactions after the July 12, 2005 announcement of the purported WalMart Transaction:

a) On July 12, 2005, Peter Sarmanian, a Host America Director, sold 40,000 or approximately 66% of his shares, decreasing his shares held from 60,500 to 20,500, and providing a financial gain totaling approximately $256,000; and

b) On July 12, 2005, Gilbert Rossomando, a Host America Director, and Lindsey Food Service Corp. President, sold 4,500 shares of the Company=s stock, approximately 10% of his stake, providing Mr. Rossomando with a gain of approximately $29,000.

72.     In addition, on July 18, 2005, Roger Lockhart, Host America's No. 2 shareholder and one of its controlling shareholders, as well as a Director and controlling shareholder of EnergyNSync, sold off the majority of 94% of his stake in the Company's common shares, in

trades worth $5.4 million. This left him with only 24,500 shares. Prior to these sales, Mr. Lockhart owned approximately 9% of the Company's outstanding common stock. Mr. Lockhart also sold 135,400 warrants on the stock exercisable at $5.50, in trades worth $1.2 million. Mr. Lockhart, with the exception of the July 18 trades and another sale of 36,000 shares at $4.17 in October of 2004, had sold no shares in the company for three years. Mr. Lockhart acquired the majority of his stake in Host America as a result of the Company's acquisition of GlobalNet in December 23, 2003, where he was a principal shareholder and the Company's merger with Selectforce, Inc., in March 2002, where he served as the sole director and was a principal shareholder owning 49.42% of Selectforce, Inc.'s, common stock;

73.    On August 31, 2005, the Company announced that "[b]ased on the preliminary findings of the Special Committee's investigation into the facts and circumstances surrounding the July 12, 2005 press release," it had placed defendant Ramsey "on administrative leave without pay pending the completion of the Special Committee's investigation and its determination regarding what further personnel actions are necessary and appropriate." On November 28, 2005, the Company announced that it terminated defendant Ramsey as well as his wife who served as Secretary and Director of Human Resources for the Company.

## RELIANCE

74.    At all relevant times herein, Plaintiffs reasonably relied on defendant's materially false and misleading disclosures concerning the purported WalMart Transaction set forth above, in purchasing Host America securities. Had Plaintiffs known the truth about the purported WalMart Transaction as set forth above, they would not have purchased the Host America stock that they did.

## DEFENDANT CAUSED PLAINTIFFS' LOSSES

75.    As set forth above defendant engaged in a scheme to deceive the market and a course of conduct that artificially inflated Host America's stock price and operated as a fraud or deceit on Plaintiffs who purchased Host America stock by misrepresenting the Company's business prospects. Once defendant's misrepresentations and fraudulent conduct were disclosed to the market, Host America's stock price reacted negatively as the artificial inflation was removed from Host America stock price. As a result of their purchases of Host America stock, Plaintiffs suffered economic loss as they reasonably relied on the misrepresentations made by defendant.

76.    Defendant's false and misleading statements had the intended effect and caused Host America stock to trade at artificially inflated levels.

77.    As investors and the market became aware that Host America's prior misstatements and omissions and that Host America's actual financial condition and business prospects were, in fact, not as represented, Host America's stock price reacted negatively, damaging Plaintiffs.

### FIRST COUNT

### FRAUD

78.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

79.    This first claim for fraud under Connecticut common-law.

80.    Defendant knew or recklessly disregarded that the disclosures regarding the WalMart Transaction were materially false and misleading as there was no such agreement to install the LightMasterPlus product in WalMart.

81.     Defendant intentionally and/or recklessly published such false statements to induce plaintiffs' reliance on such false statements with the expectation that plaintiffs would rely on such statements and purchase Host America securities.

82.     Plaintiffs justifiably relied on such statements to their detriment in purchasing Host America stock.

83.     Defendant's fraud has damaged Plaintiffs.

### SECOND COUNT

### FRAUDULENT NON-DISCLOSURE

84.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

85.     This second claim for fraudulent non-disclosure under Connecticut common-law.

86.     Defendant knew or recklessly disregarded that the disclosures regarding the WalMart Transaction were materially false and misleading as there was no such deal.

87.     Defendant had a duty to disclose the truth of the WalMart Transaction but did not.

88.     Defendant withheld the truth regarding the WalMart Transaction as set forth above and knew or recklessly disregarded that such omission would have induced Plaintiffs to buy Host America stock.

89.     In doing so, Defendant created an artificial demand in Host America stock that caused the Host America stock to be artificially inflated. Defendant's officers, directors and controlling shareholders personally benefited from the omission of the non-existence of any deal with WalMart as they sold significant portions of their own stock holdings in Host America at artificially inflated prices as set forth above.

90.     Plaintiffs justifiably relied on such statements to their detriment in purchasing

Host America stock and thus were damaged.

## THIRD COUNT

## FRAUDULENT MISREPRESENTATION

91.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

92.    This third claim for fraudulent misrepresentation under Connecticut common-law.

93.    Defendant knew or recklessly disregarded that the disclosures regarding the WalMart Transaction were materially false and misleading as there was no such agreement as conveyed by defendant.

94.    Defendant had a duty to disclose the truth of the WalMart Transaction but did not.

95.    Defendant knew or recklessly disregarded that such fraudulent misrepresentation would have induced Plaintiffs to buy Host America stock.

96.    In doing so, Defendant created an artificial demand in Host America stock that caused the Host America stock to be artificially inflated.  Defendant personally benefited from their fraudulent misrepresentation of the WalMart Transaction (that did not exist) as its officers, directors and controlling shareholders sold significant portions of their own stock holdings in Host America at artificially inflated prices as set forth above.

97.    Plaintiffs justifiably relied on such statements to their detriment in purchasing Host America stock and thus were damaged.

## FOURTH COUNT

## NEGLIGENT MISREPRESENTATION

98.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

20

99.     The fourth claim for negligent misrepresentation.

100.    Defendant knew or should have known that the disclosures regarding the WalMart Transaction were materially false and misleading as there was no such deal.

101.    Defendant had a duty to disclose the truth of the WalMart Transaction but did not.

102.    Defendant disseminated the false and misleading WalMart Transaction information to Plaintiffs in connection with a commercial transaction and in doing so, failed to exercise reasonable care or competence in obtaining and/or communicating the information to Plaintiffs.

103.    Defendant knew or should have known that the false and misleading WalMart Transaction information would induce Plaintiffs to buy Host America stock as they did.

104.    Defendant created an artificial demand in Host America stock that caused the Host America stock to be artificially inflated.  Defendant personally benefited from their negligent misrepresentation of the WalMart Transaction (that did not exist) as its officers, directors and controlling shareholders sold significant portions of their own stock holdings in Host America at artificially inflated prices as set forth above.

105.    Plaintiffs justifiably relied on such statements to their detriment in purchasing Host America stock and thus were damaged.

## FIFTH COUNT

### RESPONDEAT SUPERIOR LIABILITY

106.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

107.    This fifth claim of liability is against Host America under the Connecticut common-law doctrine of *respondeat superior*.

21

108.   Host America is liable for the conduct of its agents and employees, specifically its CEO Geoffrey Ramsey for issuing and confirming the false statement, as his misconduct occurred while he was acting within the scope of his authority as agents, officers, directors, and employees of Host America.

109.   The conduct of the Ramsay complained of herein was taken upon the express direction or implied acquiescence of Host America.

110.   Therefore, Host America is liable under the doctrine of *respondeat superior*.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(A)   Declaring defendant liable under the first, second, third, fourth and fifth claim of this Complaint;

(B)   Awarding each individual plaintiff damages in the corresponding amounts set forth in paragraphs 7 through 52 above, and to the plaintiffs collectively in an amount equal to the sum of such individual damages specified above, punitive damages, plus pre-judgment interest thereon;

(C)   Awarding plaintiffs the costs and expenses of this litigation, including reasonable attorney's fees, expert's fees and other costs and disbursements; and

(D)   Awarding plaintiffs such other and further relief as the Court may deem just and proper.

22

STRATTON FAXON

Joel T. Faxon, Esq.
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Tel: (203) 624-9500
Fax: (203) 624-9100
Juris No: 421593


THE ROSEN LAW FIRM, PA
350 Fifth Avenue, Suite 5508
New York, NY 10118
Tel: (212) 686-1060
Fax: (212) 202-3827


Attorneys for Plaintiffs


PLEASE ENTER THE APPEARANCE OF:
STRATTON FAXON FOR THE PLAINTIFFS.

23