```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

Enrique Jose Contreras, et al.,   :
     Plaintiffs,                  :
                                  :
v.                                :      Case No. 3:06cv840 (JBA)
                                  :
Host America Corporation,         :
     Defendant                    :
```

**RULING ON PLAINTIFFS' MOTION TO REMAND [DOC. # 11]**

Plaintiffs, 45 individuals and 2 corporate entities who purchased defendant's stock in July 2005, initially filed this action in Connecticut Superior Court asserting claims of common law fraud, fraudulent non-disclosure, fraudulent misrepresentation, and negligent misrepresentation arising out of allegedly materially false statements made by defendant Host America Corporation ("Host America") on July 12, 2005 when it announced that it had received a firm commitment from WalMart to purchase its LightMasterPlus product for installation in WalMart stores. See Compl. [Doc. # 1-2].

Defendant removed the suit to this Court pursuant to 28 U.S.C. §§ 1441 and 1448, claiming that the Court "has jurisdiction over this matter because the Complaint alleges a claim arising under the laws of the United States, to wit, the Securities Exchange Act of 1934, as amended, within the meaning of 28 U.S.C. § 1331, and in addition is removable on the ground that the action appears to have been intentionally structured in

1

an attempt to circumvent the provisions of 15 U.S.C. § 78bb(f)(2)." Notice of Removal [Doc. # 1-1] at ¶ 6. Plaintiffs now move to remand on the basis that no federal subject matter jurisdiction exists because plaintiffs have asserted only state common law claims [Doc. # 11], and defendant opposes [Doc. # 16]. For the reasons that follow, plaintiffs' Motion to Remand will be granted.

**I.   STANDARD**

Removal from state court to federal court is proper under 28 U.S.C. § 1441 in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In the absence of diversity of citizenship, the district court has original jurisdiction only if the case "arises under" federal law in accordance with 28 U.S.C. § 1331. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The burden of establishing the existence of federal subject matter jurisdiction rests on the removing party, see United Mutual Houses, L.P. v. Andujar, 230 F. Supp. 2d 349 (S.D.N.Y. 2002) (citing Caterpillar, 482 U.S. at 391-92), and "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability," Somlyo v. J. Lu-Rob Enter., Inc., 932 F.2d 1043,

1045-46 (2d Cir. 1991).

As a general matter, "removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint." Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir. 1986). This is because "[i]t has been the law for decades that the party who brings a suit is master to decide what law he will rely on. . . . Where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground." Id.

"However, in certain limited circumstances a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of 'artful pleading.'" Id.[1] The cases in which federal courts have permitted removal on the basis of the artful pleading doctrine fall into two general categories: (1) "cases in which federal preemption has eliminated the legal foundation of plaintiff's state law claims" ("complete preemption"), and (2) "cases in which plaintiff's choice of a

---

[1] The artful pleading doctrine evolved primarily from a footnote in Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981), in which the Supreme Court approved the appellate court's affirmance of removal, stating "[w]e agree that at least some of the claims had a sufficient federal character to support removal. As one treatise puts it, courts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization'" (citing Wright & Miller, Federal Practice & Procedure § 3722).

state forum is motivated by the desire to evade the consequences of [federal] litigation." See Bowlus v. Alexander & Alexander Servs., Inc., 659 F. Supp. 914, 918-19 (S.D.N.Y. 1987). The rationale underlying these exceptions is that "[a] federal court need not blind itself to the real gravamen of a claim because plaintiff tenders a blindfold in the form of artificial characterizations in its complaint." In re Wiring Device Antitrust Litig., 498 F. Supp. 79, 82 (E.D.N.Y. 1980) (Weinstein, J.). Thus, the Second Circuit has identified as relevant factors in determining whether to permit removal based on artful pleading: (1) whether the elements of a plaintiff's claim(s) are virtually identical to those of a claim expressly grounded on federal law, and (2) whether a plaintiff previously elected to proceed in federal court. See Sarkisian, 794 F.2d at 761.[2]

---

[2] Plaintiffs contend that the holding in Sarkisian was substantially limited, if not overruled, by the Supreme Court's opinion in Rivet v. Regions Bank of Louisiana, 522 U.S. 470 (1998). While the Court is mindful of Rivet's rejection of the "claim preclusion" interpretation in Moitie, on which Sarkisian relied, stating "Moitie did not create a preclusion exception to the rule, fundamental under currently governing legislation, that defendant cannot remove on the basis of a federal defense," 522 U.S. at 478, the Court is not convinced that Rivet overruled application of this two-part test from Sarkisian. See Bellido-Sullivan v. Am. Int'l Group, Inc., 123 F. Supp. 2d 161, 164 (S.D.N.Y. 2000) ("Some lower courts have suggested that federal preemption is actually the only situation which would justify removal. . . . Furthermore, one leading treatise [Wright & Miller] notes that it is peculiar that the United States Supreme Court's opinion in Rivet – a decision which attempted to clarify the artful pleading doctrine – made no mention of this second type of artful pleading, declaring simply that, '[t]he artful pleading doctrine allows removal where federal law completely

4

**II.   DISCUSSION**

The first category of cases in which removal has been permitted – where the claims are completely preempted by federal law – is admittedly not applicable here.  The Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), at 18 U.S.C. § 78bb(f)(1), provides that "[n]o covered class action, based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  A "covered class action" includes a lawsuit in which damages are sought on behalf of more than 50 people." 15 U.S.C. § 78bb(f)(5)(B).  The purpose of SLUSA is "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the 1995 Private Securities Litigation Reform Act ("PSLRA").  See SLUSA § 2(5), 112 Stat. 3227.  However, "[t]he Act does not does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1512 (2006).  Accordingly, plaintiffs may file suits in groups of under 50 individuals alleging state

---

preempts a plaintiff's state law claim.' <u>While this is curious, it is doubtful that the Court would abandon its precedent in this area in such a subtle fashion</u>.") (emphasis added).

5

common law violations and "[t]he existence of [such] a calculated strategy to avoid SLUSA preemption [will] not, by itself, permit a finding [of] preemption."  In re Worldcom Inc. Sec. Litig., 308 F. Supp. 2d 236, 245 (S.D.N.Y. 2004).[3]

The second rationale for permitting removal based on artful pleading – where plaintiff's choice of a state forum appears to be motivated by the desire to evade the consequences of prior litigation – also is inapplicable to this action.  Turning to the second criterion first, the elements of the federal claim asserted in the now consolidated federal action (Case No. 05cv1250 (JBA)) are not "virtually identical" to the elements of plaintiffs' state common law claims asserted in this action.  Compare Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (holding that the elements of a claim under Section 10(b) of the Securities Exchange Act of 1934 are: (1) a material misrepresentation or omission; (2) scienter; (3) connection with purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation), with Weisman v. Kaspar, 233 Conn. 531,

---

[3] Defendant requests, in the event that the Court is inclined to grant plaintiffs' Motion to Remand, leave to conduct limited discovery to determine whether, "despite plaintiffs' characterization of the number of joined plaintiffs, removal is proper under SLUSA [on the basis that] [w]hile the Complaint only names 47 plaintiffs, there is reason to believe that there are necessary plaintiffs and/or plaintiffs who are acting in a representative capacity."  Def. Opp. at 27 n.9.  However, because the Court determines that it does not have subject matter jurisdiction over plaintiffs' claims, it does not have the jurisdiction to order such discovery.

539 (Conn. 1995) ("The essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury.").

As was the case in Sarkisian, simply because plaintiffs here allege facts which also constitute a federal cause of action under Section 10(b) of the Securities Exchange Act and Rule 10b-5, and plaintiffs' claims arise out of the same factual predicate as that underpinning the federal action, the substantive claims are not per se identical. See Sarkisian, 794 F.2d at 761 (holding that plaintiff's state law claims – though arising out of the same nucleus of operative facts as the federal claim – were not virtually identical to those previously pled under RICO because the state law claims did not include "a pattern of racketeering activity" or operation of an "enterprise," as required under RICO); compare In re NASDAQ Market Makers Antitrust Litig., 929 F. Supp. 174, 178 (S.D.N.Y. 1996) (finding state law claim to be a "well-disguised federal claim[]" where, inter alia, "the Alabama statute makes illegal essentially the same acts prohibited by the federal antitrust laws"); In re Wiring Device Antitrust Litig., 498 F. Supp. 79, 82 (E.D.N.Y. 1980) (denying motion to remand where "[w]hile plaintiff . . .

alleged only state law claims in his complaint and argue[d] strenuously that by doing so federal jurisdiction [was] precluded, it [wa]s nevertheless evident that a federal antitrust question [was] integral to its claims").

Additionally, although defendant refers to the fact that plaintiffs appear to invoke a fraud-on-the-market reliance presumption, by referring to artificial stock demand and price inflation, a theory which is not available in the state common law fraud claims asserted by plaintiffs, plaintiffs do in fact allege actual justifiable reliance on defendant's July 12, 2005 press release.  See Compl. ¶¶ 5-51, 74.  Accordingly, notwithstanding defendant's protestations that "none of the plaintiffs allege . . . that they actually read and relied on the July 12, 2005 press release," Def. Opp. at 22, because plaintiffs' state common law claims require proof of <u>actual</u> reliance, and may not rely on a fraud-on-the market theory instead, plaintiffs will have the burden of demonstrating the sufficiency of these allegations, and of proving them, in state court.[4]

Thus, even though plaintiffs use in their Complaint some language identical to that of the complaints in the federal action, and the factual predicate of each action is identical,

---

[4] Likewise, defendant's argument concerning the viability of plaintiffs' negligent misrepresentation claim may also be tested upon remand to state court.

the claims asserted in this case cannot be said to be inherently federal in nature, or dependent on a federal question or federal claim, such that removal would be justified.  See Bellido-Sullivan, 123 F. Supp. 2d at 165 ("As for the second situation [where artful pleading will permit removal] where federal law is necessary and central to the plaintiff's state law claims, courts will generally only allow removal where a determination of the meaning or application of federal law is required to resolve a claim created by state law.").  Indeed, the existence of a "calculated strategy to avoid SLUSA preemption," such as that employed by plaintiffs here, "does not, by itself, permit a finding [of] preemption," see In re WorldCom, Inc. Sec. Litig., 208 F. Supp. 2d at 245, because, as the Supreme Court has recognized, SLUSA "does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist," Dabit, 126 S. Ct. at 1514.[5]

---

[5] Because the Court determines that the second prong of the artful pleading removal test – virtual identity of federal and state claims – has not been satisfied, it need not reach the question of whether plaintiffs have previously elected to proceed in federal court within the meaning of Sarkisian and its progeny. The Court nevertheless notes that this prong appears applicable to, at most, only the handful of plaintiffs who were involved in the federal action and in the opposition to remand even those plaintiffs expressed their intention to opt out of the proposed federal class in favor of pursuing remedies under state law (as the proposed federal class has not yet been certified, plaintiffs here are not yet parties in that action as class members, nor have they yet had an opportunity to formally opt out of that

Accordingly, the doctrine of artful pleading may not be invoked in this case to negate the general rule that the plaintiffs are the master of their complaint, and to deem plaintiffs' state common law claims to be in essence federal claims thus justifying removal.[6]

**III. CONCLUSION**

For the foregoing reasons, plaintiffs' Motion to Remand [Doc. # 11] is GRANTED and the Clerk is directed to remand this case to the Connecticut Superior Court, Judicial District of New Haven.

IT IS SO ORDERED.

/s/
Janet Bond Arterton
United States District Judge

**Dated: New Haven, Connecticut on this 1st day of September, 2006.**

class).

[6] Plaintiffs indicate that they intend to move for fees and costs associated with their motion to remand pursuant to 28 U.S.C. § 1447(c). "[T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 126 S. Ct. 704, 711 (2005). As demonstrated herein, the issue of the validity of defendant's removal in this case is complex and the answer not obvious in light of established case law and thus it cannot be said that defendant lacked an objectively reasonable basis for removal and accordingly any motion for fees and costs would not be well-founded.